IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PETER J. LASLO,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | ) | Civil No. 07-1756-JE<br><br>FINDINGS AND RECOMMENDATION |

Karen Stolzberg
11830 S.W. Kerr Parkway, #315
Lake Oswego, OR 97035

Attorney for Plaintiff

Karin J. Immergut
U.S. Attorney, District of Oregon
Britannia I. Hobbs
Asst. U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Carol A. Hoch
Special Asst. U.S. Attorney
Office of General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Peter Laslo brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits. Plaintiff moves to remand this action to the Social Security Administration (the Agency) pursuant to sentence six of 42 U.S.C. § 405(g), for consideration of additional medical evidence.

For the reasons set out below, I recommend granting plaintiff's motion for remand.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on April 28, 2004, alleging that he had been disabled since December 28, 2003. After his claims were denied initially and upon reconsideration, he timely requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held before ALJ Ralph Jones on October 23, 2006. In a decision issued on February 20, 2007, ALJ Jones denied plaintiff's applications for benefits.

Plaintiff timely requested review by the Appeals Council. The decision of the ALJ became the final decision of the Commissioner on October 15, 2007, when the Appeals

Council denied plaintiff's request for review. In the present action, plaintiff seeks review of that decision.

## FACTUAL BACKGROUND

Plaintiff was born on June 17, 1955. He was 51 years old at the time of the hearing before the ALJ, and was 52 years old when the ALJ issued his decision denying plaintiff's applications for benefits.

Plaintiff has past relevant work in construction and remodeling.

## PENDING MOTION

Plaintiff moves to remand this action to the Agency for consideration of medical evidence that was not before the ALJ when he evaluated plaintiff's applications for DIB and SSI. This evidence includes chart notes from Coastal Family Health Center dated January 24, 2007, through July 25, 2008; chart notes from Clatsop Behavioral Healthcare dated December 21, 2007, through July 7, 2008; and a letter from Dr. Robert Peterson, dated August 16, 2008.

## MEDICAL RECORD

1. Record before the ALJ

At the hearing before the ALJ, plaintiff testified that, in 2003, his hands began swelling, and his fingers enlarged. Plaintiff testified that he could no longer hold onto his work tools, and that his forearms felt "smashed." Plaintiff testified that he had difficulty

getting dressed, and could not pick up heavy objects. He also testified that he experienced episodes of sharp pain in his rib cage on his right side, which lasted 4 to 5 hours.

Plaintiff's most significant issue is problems with his hands and arms. In April, 2004, plaintiff told a doctor that his hands were numb, and that he had lost strength in his hands during the previous five months, and had been unable to work. Plaintiff added that he experienced swelling and cramping in his hands. The doctor did not think that the findings were consistent with carpal tunnel syndrome, and referred plaintiff for nerve conduction studies.

Following her examination of plaintiff on June 9, 2004, Dr. Deborah Syna reported that there was "prominent giveaway weakness" in all of plaintiff's intrinsic hand movements, but that "indirect observation" of plaintiff's use of his hands suggested greater strength in hand muscles than was demonstrated on direct strength testing. Dr. Syna thought that the examination suggested some embellishment, and opined that there could be "issues of secondary gain."

A cervical MRI performed on June 16, 2004, showed degenerative disc changes at C5-6 with a small focal disc herniation on the right, slight cord impingement, and mild to moderate right foraminal stenosis which was not considered a likely cause of plaintiff's bilateral symptoms. The report of this MRI also noted the possibility of very minimal, very shallow disc protrusion on the right at C6-7.

Nerve conduction studies performed by Dr. Syna on June 24, 2004, were normal for carpal tunnel, ulnar neuropathy, or radiculopathy. Dr Syna reported that the results of a full root survey were normal, and that there was no evidence that nerve compression was causing plaintiff's symptoms. She also indicated that further neurologic follow-up was not required.

In notes of plaintiff's office visit on July 6, 2004, Dr. Hugh Stelson reported that plaintiff complained of problems with his forearms and hands. Plaintiff told Dr. Stelson that he was unable to work because his hands were weak, numb, and went into spasms. Dr. Stelson noted that, though plaintiff could fully extend his hands and make a fist, he liked to keep them "in a clawed position." Plaintiff told Dr. Stelson that his hands went into that position naturally, and said that his hands sometimes burned as if someone had stepped on them. Dr. Stelson indicated that his assessment was "uncertain." He observed that, though plaintiff's symptoms were like those of "a peripheral neuropathy," they differed in that only the arms were involved. Pending a diagnosis, Dr. Stelson had no recommendations.

Plaintiff was examined by Dr. Michael Dorsen at the Legacy Neurosurgery Clinic on March 10, 2005. Dr. Dorsen noted that plaintiff held his hands in a "clawed" position, and that his grip was markedly decreased, with the left hand more severely affected than the right hand. Extension of the wrists and fingers was unimpaired, and plaintiff was unable to grip. Dr. Dorsen opined that plaintiff was not suffering from polyneuropathy or RSD, but that he may be suffering from "some entrapment syndrome at the wrists which was not reflected in earlier electrophysiologic studies." Dr. Dorsen's impression was "[b]ilateral ulnar and median neuropathy, left greater than right," and "[r]ight C5-6 disk protrusion, asymptomatic." He recommended a follow-up EMG and nerve conduction studies.

In his report following a consultation on November 8, 2005, Dr. Jeffrey Gerry noted that all plaintiff's hand intrinsic muscles revealed weakness. Dr. Gerry noted that plaintiff had significant arthritic changes in both hands, and thought that plaintiff's symptoms were perhaps due to pain inhibition. X-rays of plaintiff's hands were negative.

Plaintiff began treating with Physician's Assistant (PA) Stephen Leonardo at the Coastal Family Health Center in November, 2005. During plaintiff's first visit, Leonardo noted decreased grip strength, decreased sensation with monofilament testing to all distal digits and central palms, and significant intrinsic finger weakness. In January, 2006, plaintiff complained of chronic transient chest pain, and continued bilateral hand pain and weakness. Leonard noted that none of the referrals had identified a cause for plaintiff's hand problems.

On April 27, 2006, plaintiff underwent cardiac catheterization and a coronary angiography. His left circumflex artery was found to be 70% occluded, and a stent was placed, with good results. Dr. Masud Ahmad found that plaintiff's significant risk factors for coronary artery disease included hyperlipidemia, smoking, and borderline hypertension and hyperglycemia.

A cervical MRI performed on June 30, 2006, showed a large posterior broad-based disk bulge associated with bone ridging at the C5-6 level with "severe central and bilateral lateral recess stenosis associated with cord flattening." A small right-sided focal disc protrusion, which was not compressing the spinal cord, was observed at C6-7, and the cervical discs showed degenerative desiccation.

Plaintiff was evaluated by Dr. Curtis Hill on July 25, 2006. Dr. Hill noted that X-rays showed narrowing at C5-6 "without a cord signal." He observed that plaintiff complained of weakness, but he was "not certain about the cooperation on the strength testing." Dr. Hill stated that, thought there was some narrowing, plaintiff's "symptom complex does not fit cervical myelopathy."

Plaintiff was examined by Dr. Kurt Lindsay at the OHSU neuromuscular clinic on November 21, 2006. Dr. Lindsay noted inconsistently decreased proprioception in the upper

extremities bilaterally, and decreased pinprick in the wrist and distal upper extremities bilaterally. He opined that the MRIs showed "only mild disc disease without significant foraminal or central stenosis," and concluded that he could not "find a neurologic etiology" for plaintiff's symptoms. Dr. Lindsay stated that these symptoms did not "represent a known neurologic condition."

2. Additional medical evidence at issue in pending motion to remand

Most of the medical records that plaintiff contends should be considered on remand were developed after plaintiff's October 23, 2006 hearing before the ALJ, and after the ALJ issued his decision on February 20, 2007. These include records from Clatsop Behavior Healthcare dated December 21, 2007, through July 7, 2008; records from the Coastal Family Health Center dated January 24, 2007, through July 25, 2008; and a letter written by Dr. Robert Peterson, plaintiff's treating physician at the Coastal Family Health Center, dated August 16, 2008.

Plaintiff began treating with Dr. Peterson in October, 2006, about the time of his hearing before the ALJ. In May, 2007, Dr. Peterson indicated that plaintiff had a depressive disorder and a history of somatization. Subsequently, he regularly included a diagnosis of a depressive disorder and a "suspected somatization disorder" in the progress notes of plaintiff's visits. In notes dated May 21, 2008, Dr. Peterson indicated that plaintiff had been receiving counseling for a "chronic conversion reaction."

In a letter to plaintiff's counsel dated August 16, 2008, Dr. Peterson stated that, in his opinion, plaintiff

> is suffering from a combination of physical and psychiatric illnesses. His most persistent and disabling complaints are with regard to his bilateral arms and hands, which have been painful and dysfunctional since at least 2004. Since the onset of his hand problems, Mr. Laslo has been highly motivated to try to discover the cause of this unfortunate condition, and has undergone many evaluations by a number of different specialists.

Dr. Peterson noted that none of the specialists had been able to identify a physiological cause of plaintiff's "distress in the hands and arms," and opined that plaintiff "is suffering from Somatization disorder, which is the primary cause of his arm and hand complaints." He added that plaintiff also "suffers from a Major Depressive Disorder with episodes of suicidal ideation."

Dr. Peterson reported that plaintiff appeared to be "absolutely genuine with regard to his arm and hand complaints," and stated that he had "seen no evidence of malingering or that he is exaggerating his distress." Dr. Peterson reported that, when he first discussed the diagnosis of a Somatization Disorder with plaintiff "he wouldn't even consider it, and remained almost desperate to try to find a physical cause of his distress." He added that plaintiff "remains very skeptical of the somatization diagnosis." Dr. Peterson opined that plaintiff's "psychiatric and medical condition have left him unable to work since at least early 2004."

Dr. Peterson referred plaintiff to Clatsop Behavioral Healthcare for treatment in December, 2007. Progress notes from Clatsop Behavioral Healthcare indicate that therapists thought that the hand problems that plaintiff complained of might be related to mental issues. However, it appears that no evaluation has been performed by a psychologist or psychiatrist to make that determination.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.

20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

**ALJ'S DECISION**

At the first step of the disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 1, 2003, the alleged date of the onset of his disability.

At the second step, the ALJ found that plaintiff's bilateral hand numbness, weakness, and pain, and chest and rib cage pain, were "medically indeterminable and non-severe impairments." The ALJ further found that "the objective medical evidence fails to establish the existence of a medically determinable impairment that could reasonably be expected to produce" plaintiff's bilateral hand symptoms. In discussing his findings, the ALJ also stated

that

> [r]egarding claimant's bilateral hand condition, the objective medical evidence fails to establish the existence of a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms . . . . Absent objective medical evidence, the claimant's symptoms alone cannot establish the existence of a medically determinable physical or mental impairment. An impairment must result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Thus, regardless of how genuine the claimant's complaints may appear to be, when there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, a finding of not disabled is required at step two of the sequential evaluation process . . . .

In the absence of a showing that he has a "medically determinable physical or mental impairment," a claimant must be found "not disabled" at the second step of the disability evaluation process. Social Security Ruling 96-4p. Accordingly, given that he had found that the evidence did not establish that plaintiff's bilateral hand condition was a "medically determinable impairment," the ALJ found that plaintiff's hand problems did not render him disabled within the meaning of the Act.

## DISCUSSION

1. Standards for evaluating motions to remand for consideration of new evidence

Under appropriate circumstances, a district court may remand an action challenging denial of an application for disability benefits to the Commissioner so that a claimant may present new evidence to an ALJ. 42 U.S.C. § 405(g); Osenbrock v. Apfel, 240 F.3d 1157, 1164 n. 1 (9th Cir. 2001); Orteza v. Shalala, 50 F.3d 748, 751 (9th Cir. 1995). Authority for such a remand is provided by sentence six of 42 U.S.C. § 405(g), which states that the court

> may at any time order additional evidence before the Commissioner of Social Security, but only upon a showing that there is new evidence which is

material and that there is good cause for the failure to incorporate such evidence in the record in a prior proceeding . . . .

In order to satisfy the materiality standard, the "new or additional evidence offered must bear directly and substantially on the matter in dispute." Ward v. Schweiker, 686 F.2d 762, 764 (9th Cir. 1982); Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001).

A claimant cannot establish good cause for failing to include evidence that existed earlier, and it is not enough to simply obtain a more favorable opinion from an expert witness after a claim has been denied. Wainwright v. Secretary of Health & Human Services, 939 F.2d 680, 683 (9th Cir. 1991) (quoting Clem v. Sullivan, 894 F.2d 328, 332 (9th Cir. 1990)). Instead, good cause is shown when the new evidence was unavailable earlier. Id. (citing Embrey v. Bowen, 849 F.2d 418, 423-24 (9th Cir. 1988)).

2. Analysis

The parties agree that the material that plaintiff now submits was not before the ALJ when he made the decision at issue in this action. Accordingly, the question is whether the proffered evidence is material, and if so, whether there is good cause for plaintiff's failure to present it earlier.

Based upon a careful examination of the administrative record, the parties' arguments, and the additional evidence plaintiff now presents, I conclude that the medical evidence in question is material, and that plaintiff has shown good cause for the failure to produce it earlier.

As noted above, at step two of the disability analysis, the ALJ found that plaintiff was not disabled because his bilateral hand problems did not constitute a "medically determinable physical or mental impairment." That determination was consistent with Social Security

Ruling 96-4p, which requires a finding of "not disabled" at step two in the absence of a showing that a claimant has a medically determinable physical or mental impairment. The new evidence that plaintiff asks to be considered on remand includes a diagnosis of a somatoform disorder by Dr. Peterson that could provide a "medically determinable" basis for the impairment of plaintiff's hands. This evidence bears "directly and substantially on a matter in dispute," which is whether plaintiff had a severe medically determinable impairment during the time period relevant to the ALJ's decision. As the ALJ correctly noted, at the time of the decision denying plaintiff's applications for disability benefits, no physical or mental basis for plaintiff's bilateral hand problems had been presented.

A determination that plaintiff's bilateral hand condition was a "medically determinable impairment" would not necessarily result in a finding of disability. However, Dr. Peterson 's diagnosis appears to apply to plaintiff's condition during the time covered by the ALJ's decision, and Dr. Peterson specifically opined that plaintiff's "psychiatric and medical conditions have left him unable to work since at least early 2004." In his applications for benefits, plaintiff alleged that he was disabled, in part, due to numbness and loss of use of his hands that began in December, 2003. Under these circumstances, it is reasonably likely that an ALJ considering the somatoform disorder diagnosis and related medical evidence would proceed beyond step two of the disability analysis, the step at which plaintiff's claims failed earlier. This is sufficient for concluding that the additional evidence at issue is "material."

As noted above, the ALJ issued his decision denying plaintiff's applications for benefits on February 20, 2007, and the Appeals Council denied plaintiff's request for review of that decision on October 15, 2007. Dr. Peterson noted a "history of somatization" among

plaintiff's diagnoses in June, 2007, and noted "suspected somatization" in November, 2007. He did not refer plaintiff to Clatsop Behavioral Healthcare for further evaluation and treatment until December, 2007, well after the Appeals Council had denied plaintiff's request for review. From the records submitted, it appears that therapists at the Clatsop Behavioral Healthcare consider a "Conversion Disorder" as a possible diagnosis, but that plaintiff has not been evaluated by a psychiatrist or psychologist.

From his letter to plaintiff's counsel dated August 16, 2008, it is not clear when Dr. Peterson became convinced that plaintiff suffered from a disabling combination of psychiatric and physical illnesses. It is clear that plaintiff himself has resisted a diagnosis of a Somatization Disorder, and that he did not receive any psychological treatment before the decision denying his applications for benefits had become final. Under these circumstances, I am satisfied that "good cause" exists for plaintiff's failure to present the evidence at issue here before the earlier decision became final, because substantial evidence of a medically determinable basis for his bilateral hand impairment did not exist at that time. Though it appears that a diagnosis of a somataform disorder applies equally to plaintiff's present condition and the period under consideration when the decision denying his applications was made, substantial evidence supporting that diagnosis did not exist earlier. That evidence exists now, and should be considered. Accordingly, I recommend granting plaintiff's motion to remand.

**CONCLUSION**

Plaintiff's motion to remand this action should be GRANTED, and a judgment should be entered remanding this action pursuant to sentence six of 42 U.S.C. § 405(g).

**SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due December 18, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 2nd day of December, 2008.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge